IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES D. GILBERT,<br><br>              **Plaintiff**,<br><br>     v.<br><br>CHASE HOME FINANCE, LLC,<br>JPMORGAN CHASE BANK, N.A., and<br>DOES 1-100 inclusive,<br><br>              **Defendants.** | 1:13-CV-265  AWI SKO<br><br>**ORDER ON DEFENDANTS'<br>MOTION TO DISMISS**<br><br>(Doc. No. 5) |

This is a mortgage related case that was removed from the Stanislaus County Superior Court. Plaintiff James Gilbert ("Gilbert") has brought suit against Chase Home Financing ("CHF") and JPMorgan Chase Bank ("JP Morgan"), collectively "Defendants." The active complaint is the Second Amended Complaint ("SAC"), which was filed in state court. Gilbert alleges causes of action for breach of express contract, breach of implied agreement, slander of title, California Business & Professions Code § 17200 ("UCL"), money had and received, and 18 U.S.C. § 1962 ("RICO"). Defendants now move to dismiss the SAC. For the reasons that follow, the motion will be granted.

**BACKGROUND**

From the SAC and judicially noticed documents, Gilbert obtained title to property located at Nicklaus Drive in Turlock, California ("the Property") in 2003. See Defendants' Request of

Judicial Notice ("RJN") Ex. 1.[1]  In 2007, Gilbert obtained a residential loan in the amount of $328,500 on the Property, and the loan was secured by a deed of trust.  See RJN Ex. 2.  The deed of trust was recorded in March 2007.  See id.  The deed of trust identifies the lender as JP Morgan and identifies the trustee as Maryanne Day And Home Office.  See id.

Later in 2007, JP Morgan sold the deed of trust to Freddie Mac as part of a securitization.  Gilbert alleges that the Defendants did not securitize the note and deed of trust in accordance with the Pooling Servicing Agreement ("PSA") that applied to the relevant Freddie Mac Trust.

On April 29, 2011, CHF informed Gilbert that he was eligible for a loan modification.  The letter also indicated that CHF is the current lender of the deed of trust.  Gilbert alleges that the actual lenders are those individuals who invested in the securitized note, and those individuals have not been consulted with respect to the loan modification.

On June 21, 2012, Gilbert filed this lawsuit in state court, and on July 5, 2012, filed a lis pendens notice in the Stanislaus County Recorder's Office.

After filing an amended complaint, Defendants filed a demurrer.  As part of his November 13, 2012 opposition to the demurrer, Gilbert stated that he was not in foreclosure.  The state court granted the demurrer with leave to amend.

Following the order granting the demurrer, Gilbert filed the SAC.  Defendants removed the case to this Court on February 21, 2013, due to the SAC's inclusion of a RICO claim.

## RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d

---

[1] Citing California law, Gilbert objects to the RJN.  The RJN includes three documents that are related to Gilbert's property (a grant deed, a deed of trust, and a notice of lis pendens) and that were all filed in the Stanislaus County Recorder's Office.  The Court will take judicial notice of these documents as public records.  See Fed. R. Evid. 201; Botelho v. U.S. Bank, N.A., 692 F.Supp.2d 1174, 1178 (N.D. Cal. 2010); Allen v. United Fin. Mortg. Corp., 660 F.Supp.2d 1089, 1093-94 (N.D. Cal. 2009).  Gilbert's objection is overruled.

1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121. However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Willson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take judicial notice of public records outside the pleadings, review materials which are properly submitted as part of the complaint, and review documents that are incorporated by reference in the Complaint if no party questions authenticity. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

**DEFENDANTS' MOTION**

**1.     1st and 2nd Causes of Action – Breach of Express and Implied Contracts**

*Defendants' Argument*

Defendants argue that the first two causes of action are based on the deed of trust, the PSA, and a loan modification agreement.  However, there is no indication that there is actually a loan modification contract.  Instead, the only allegation is that in April 2011, Gilbert was informed that he was merely eligible for a loan modification.   Further, there are no actual allegations that show a breach of any contractual provision, or that Gilbert's rights to receive the benefits of the deed of trust have been impaired.  Also, contrary to Gilbert's assertion, California law does not require the recordation of an assignment of a deed of trust.  Additionally, Gilbert does not have standing to challenge the securitization process, and he has shown no prejudice from securitization.  Finally, the damages identified by Gilbert are prospective and speculative, as no foreclosure process has commenced on the Property.

*Plaintiff's Opposition*

Gilbert argues that the notice of default is false and contrary to the Freddie Mac Trust.  JP Morgan breached the terms of the of the PSA in that the loan was not assigned to the Freddie Mac Trust within 90 days of the trust's closing.  Therefore, Maryanne Day And Home Office could not act on behalf of the true beneficiary in executing the notice of default.  Further, no assignment of the deed of trust was recorded, despite the securitization of the loan.  Because the Freddie Mac Trust holds the loan, JP Morgan cannot take a default or issue notices of default.

*Legal Standard*

Under California law, contracts may be either express or implied. Marvin v. Marvin, 18 Cal.3d 660, 678 n.16 (1976).  The difference between an express contract and an implied contract is the mode of proof by which they are established.  See Crawford v. Gould, 56 F.3d 1162, 1168 (9th Cir. 1994); Marvin, 18 Cal.3d at 678 n.16.  An express contract is shown through the direct spoken or written words of the parties, while an implied contract is shown by the acts and conduct of the parties.  See Crawford, 56 F.3d at 1168; Marvin, 18 Cal.3d at 678 n.16; Cal. Civ. Code §§ 1620, 1621.  The elements of a cause of action for either breach of an express contract

or breach of an implied contract are the same. See Gomez v. Lincare, Inc., 173 Cal.App.4th 508, 525 (2009); Division of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal.App.3d 268, 275 (1977). The elements of a breach of contract cause of action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff. Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011); Reichert v. General Ins. Co., 68 Cal.2d 822, 830 (1968).

*Discussion*

Gilbert's opposition is confusing and almost entirely non-responsive to Defendants' arguments. From the SAC, the Court gathers that there are three contracts at issue: the deed of trust, the PSA, and the loan modification. The Court will address these agreements separately.

      a.    PSA

Gilbert's allegations about violations of the Freddie Mac Trust's PSA, including the transfer of Gilbert's loan after the closing date, is not a novel contention. A majority of district courts have held that plaintiffs like Gilbert who are not parties to a PSA do not have standing to raise violations of a PSA or to otherwise bring claims on the basis that a PSA was violated. See Elliot v. Mortgage Elec. Registration Sys., 2013 U.S. Dist. LEXIS 61820, *7-*10 (N.D. Cal. Apr. 25, 2013); Sabherwal v. Bank of N.Y. Mellon, 2013 U.S. Dist. LEXIS 2930, *20-*21 (S.D. Cal. Jan. 7, 2013); Dinh v. Citibank, N.A., 2013 U.S. Dist. LEXIS 2312, *8-*11 (C.D. Cal. Jan. 7, 2013); Ramirez v. Kings Mortg. Servs., 2012 U.S. Dist. LEXIS 160583, *13-*14 (E.D. Cal. Nov. 8, 2012); Armstrong v. Chevy Chase Bank, FSB, 2012 U.S. Dist. LEXIS 144125, *6-*7 (N.D. Cal. Oct. 3, 2012); Hale v. World Sav. Bank, 2012 U.S. Dist. LEXIS 141917, *17-*18 (E.D. Cal. Oct. 1, 2012); Almutarreb v. Bank of N.Y. Trust Co., N.A., 2012 U.S. Dist. LEXIS 137202, *3-*7 (N.D. Cal. Sept. 24, 2012); Junger v. Bank of Am., 2012 U.S. Dist. LEXIS 23917, *7-*8 (C.D. Cal. Feb. 24, 2012). The Court agrees with the majority position. See Newman v. Bank of New York Mellon, 2013 U.S. Dist. Lexis 52487, *8 (E.D. Cal. Apr. 10, 2013). Thus, the alleged violations of the PSA are not a proper basis for this or any cause of action in the SAC. See id. Dismissal of both of these contractual theories is appropriate.

b.      Deed of Trust

The SAC is unclear, but suggests that the deed of trust was breached when it was securitized and the assignment of the deed of trust was not recorded. See SAC ¶ 21. Also, the SAC alleges that Defendants invoked the power of sale and that Civil Code § 2932 was violated. See id. at ¶¶ 23, 31(a); see also ¶ 22.

Despite these allegations, the Court has found no provision in the deed of trust that requires Defendants to record a transfer. The closest provision that is apparent is ¶ 20, which deals with sales of the note together with the deed of trust. That provision only requires that notice be given to Gilbert when there is a change in servicer. Paragraph 20 does not require that transfers or assignments be recorded.[2]

Also, by citing to Civil Code § 2932 and arguing that the transfer in the securitization process was not recorded, it appears that Gilbert is actually attempting to invoke California Civil Code § 2932.5.[3] However, Civil Code § 2932.5 applies to mortgages, it does not apply to deeds of trust.[4] See Walton v. MERS, 2013 U.S. App. LEXIS 2846, *3 (9th Cir. Feb. 7, 2013); Caballero v. Bank of Am., 468 Fed. Appx. 709 (9th Cir. Feb. 15, 2012); Herrera v. Federal Nat'l Mortg. Ass'n, 205 Cal.App.4th 1495, 1508-10 (2012); Calvo v. HSBC Bank USA, N.A., 199 Cal.App.4th 118, 123 (2011). As one court has stated, "[n]othing in the comprehensive statutory scheme governing nonjudicial foreclosures (§§ 2924 through 2924*l*) contains a requirement that [the lender's] assignment of the [deed of trust] must be acknowledged and recorded before the foreclosure sale . . . ." Herrera, 205 Cal.App.4th at 1510.

Finally, by stating that the power of sale has been invoked, the SAC is essentially alleging

---

[2] The Court notes that the SAC also mentions ¶ 24 of the deed of trust. Paragraph 24 sets the procedure for substituting the trustee, it does not discuss transfer of the note or deed of trust. Further, there are no allegations that the trustee was ever substituted or that a substitution was attempted.

[3] California Civil Code § 2932.5 reads: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

[4] Civil Code § 2932 also applies to mortgages. That section reads: "A power of sale may be conferred by a mortgage upon the mortgagee or any other person, to be exercised after a breach of the obligation for which the mortgage is a security." Cal. Civ. Code § 2932.

that the foreclosure process has begun. However, Defendants have expressly stated that the foreclosure process has not begun, Gilbert has not challenged that assertion, and Gilbert's November 2012 opposition to the demurrer in state court acknowledges that he is not in foreclosure. Significantly, neither party has submitted a notice of default or any other recorded document that might suggest that foreclosure has begun, and Gilbert has made no allegations that identify when the foreclosure process began or where in the foreclosure process he is. If the foreclosure process is not proceeding or has not begun, then the power of sale has not been invoked. Without invoking the power of sale, it is unknown how Defendants could be breaching the power of sale provisions.

Dismissal of this cause of action is appropriate.

        <u>c.</u>     <u>Loan Modification</u>

The SAC does not plausibly allege that the loan modification is a contract. The SAC alleges that, on April 29, 2011, Gilbert received a letter stating that he was eligible for a loan modification. <u>See</u> SAC ¶ 11. However, there is no further description of the April 29, 2011 letter, and there is no description of the loan modification's terms and conditions. The allegations do not indicate that a contract was actually formed. There is a material distinction between actually offering a specific loan modification and simply stating that one is eligible for a loan modification. The SAC's limited description of the April 29, 2011 letter reflects merely "an inoperative step in the preliminary negotiation of a contract . . . ." <u>Donavan v. RRL Corp.</u>, 26 Cal.4th 261, 271 (2001).

The SAC states that, under *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal.App.4th 1001 (2012), a valid and enforceable loan modification was made. In *Barroso*, the complaint described the letter that informed Barroso of her eligibility for a modification, described the specific terms and requirements of the modification (including a trial period for payments), alleged performance by the plaintiff, alleged acceptance of the lower payments by the lender/servicer for a significant period of time, and described the breach. <u>See id.</u> at 1005-07. In contrast, the SAC does none of these things.

If there is an existing and enforceable loan modification, but Defendants are not accepting

the lower payment amount that is mandated thereby, then there is both an obvious breach of contract and obvious pecuniary damages. However, the description of the April 29, 2011, letter does not reveal the existence of a binding contract, the SAC does not contain any allegations that are similar to the allegations in *Barroso*, and Gilbert does not address Defendants' argument that the loan modification letter is not a contract. Dismissal of this cause of action is appropriate.

### 2. 3rd Cause of Action – Slander of Title

*Defendants' Argument*

Defendants argue that Gilbert has not alleged the elements of a slander of title claim. Defendants make many of the same arguments against this cause of action as they do against the first two causes of action, including that a record of assignment in the beneficial interest of the deed of trust is not required and that Gilbert cannot rely on securitization.

*Plaintiff's Opposition*

Gilbert argues that a cause of action has been pled. First, the recorded deed of trust is a publication and is invalid because JP Morgan is not the true beneficiary and thus, could not make a valid assignment. Rather, JP Morgan sold the beneficial interest in the deed of trust to the Freddie Mac Trust. By maintaining a false deed of trust, Defendants recorded a false document. Second, JP Morgan acted with malice because it recorded documents in reckless disregard of the facts underlying the foreclosure process. Finally, the SAC shows pecuniary loss in that Gilbert was forced to seek legal counsel to protect his interest and prevent his home from being wrongfully sold, and the deed of trust is a significant dissuasive factor to a prospective purchaser.

*Legal Standard*

The elements of a claim for slander of title are: (1) a publication; (2) the publication is without privilege or justification; (3) the publication is false; and (4) the publication causes direct and immediate pecuniary loss. See Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC, 205 Cal.App.4th 999, 1030 (2012); Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal.App.4th 1040, 1051 (2009). "If the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title." Sumner

Hill, 205 Cal.App.4th at 1030.

*Discussion*

There is no dispute that the recording of the deed of trust by Defendants in March 2007 constitutes a publication. However, it is not clear to the Court that the deed of trust is a false document. There is no dispute that Gilbert signed the recorded deed of trust or that the Property is subject to the recorded deed of trust. As part of the process for substituting a trustee, the deed of trust requires that the substitution instrument identify where in the public record that the deed of trust is recorded. See RJN Ex. 2 at ¶ 24. Thus, the deed of trust contemplates that it will be recorded as it exited when first signed. The deed of trust further makes provision for the sale and assignment of itself and the note, but it does not require that such transfers be recorded. See RJN Ex. 2 at ¶ 20. That a subsequent transaction, that was not required to be recorded, makes one aspect of the deed of trust no longer accurate does not change the fact that the deed of trust was signed by Gilbert and applies to the Property. Without additional argument and citation to applicable authority by Gilbert, it is unknown how the deed of trust filed on March 23, 2007, casts any doubt on the extent of Gilbert's interest in the Property. The Property was subject to the deed of trust on March 23, 2007, and it appears to remain subject to the same deed of trust to this day. That is, irrespective of whether JP Morgan is still the beneficiary under the deed of trust, that deed of trust remains applicable against the Property. Because Gilbert has not sufficiently pled a false publication, dismissal of this cause of action is appropriate.

**3.      4th Cause of Action – UCL**

*Defendants' Argument*

Defendants argue that Gilbert lacks standing to bring UCL claims because he has not shown an economic injury that was caused by an unfair business practice. The allegations of injury are too vague and conclusory, and there has been no foreclosure sale or notice of default. Further, Gilbert has failed to identify an "unlawful" business practice, has not pled fraudulent conduct with the particularity required by Rule 9, and has not adequately described any "unfair" conduct.

*Plaintiff's Opposition*

Gilbert argues that the other causes of action that are properly alleged in the complaint serve as the derivative basis for the UCL claim. Gilbert also argues that he is likely to prevail on his wrongful foreclosure claim and that real property is unique.

*Legal Standard*

The UCL prohibits "unfair competition," which is defined to mean any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; In re Tobacco II Cases, 46 Cal.4th 298, 311 (2009). A private person has standing to bring a UCL claim when: (1) the person establishes a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e. economic injury; and (2) show that the economic injury was the result, i.e. caused by, the unfair business practice that is the gravamen of the claim. Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011); see also Clayworth v. Pfizer, Inc., 49 Cal.4th 758, 788 (2010).

For claims based on "unlawful" conduct, the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable . . . and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383 (1992). In other words, a "defendant cannot be liable under [the UCL] for committing 'unlawful business practices' without having violated another law." Ingles v. Westwood One Broadcasting Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005).

For claims based on "fraudulent" conduct, "fraudulent conduct" under the UCL "does not refer to the common law tort of fraud . . . ." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th 638, 645 (2008). A business practice is fraudulent under the UCL if "members of the public are likely to be deceived." Kaldenbach v. Mutual of Omaha Life Ins. Co., 178 Cal.App.4th 830, 848 (2009). Whether a business practice is "fraudulent" is "based on the likely effect such practice would have on a reasonable consumer." McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1471 (2006). Further, when a plaintiff relies on a failure to disclose a fact as "fraudulent," the plaintiff must also allege the existence of a duty to disclose and reliance. See Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1556-57 (2007). Federal Rule of

Civil Procedure 9(b)'s heightened pleading standard applies to UCL claims based on "fraudulent" conduct. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009); Romero v. Countrywide Bank, NA, 740 F.Supp.2d 1129, 1147 (N.D. Cal. 2010).

For claims based on "unfair" practices that are brought by consumers, there is a split of authority and at least three different methods for determining whether a business practice is "unfair": (1) the "balancing test" in which the impact on the victim is balanced against the reasons, justifications, and motives of the wrongdoer; (2) the "tethered test" whereby an allegedly violated public policy is tethered to specific constitutional, statutory, or regulatory provisions; and (3) the "section 5 test" which adopts the factors that determine whether section 5 of the Federal Trade Commission Act has been violated, i.e. a substantial consumer injury, the injury is not outweighed by countervailing benefits to consumers or competition, and the consumers could not have reasonably avoided the injury. See In re Ins. Installment Fee Cases, 211 Cal.App.4th 1395, 1417-18 (2012); Davis v. Ford Motor Credit Co., LLC, 179 Cal.App.4th 581, 583-88 (2009).

*Discussion*

Defendants' arguments are persuasive. First, the SAC's UCL allegations aver only that Gilbert has suffered and will continue to suffer "damages." No description of the damages suffered is provided. Without allegations that show economic injury, Gilbert does not have standing. See Kwikset, 51 Cal.4th at 322.

Second, although "unlawful" conduct is mentioned, the UCL allegations do not identify which laws were violated. Without a violation of another law, there is no "unlawful" UCL claim. See Ingles, 129 Cal.App.4th at 1060.

Third, although the term "unfair" is used, there are no allegations made under the UCL cause of action that fit one of the three methods for demonstrating "unfair" conduct. See In re Ins. Installment, 211 Cal.App.4th at 1417-18; Davis, 179 Cal.App.4th at 583-88.

Finally, the "fraudulent" allegations do not meet the heightened pleading standard of Rule 9(b). Gilbert must allege the who, what, when, where, and how of the fraudulent conduct, and must also identify what each defendant did in the fraudulent scheme. See Kearns, 567 F.3d at

1124; Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).  Further, much of the UCL claims rely on violations of the PSA or irregularities in the securitization process.  As discussed above, a violation of the PSA is not a basis for a UCL claim.  See Almutarreb, 2012 U.S. Dist. LEXIS 137202 at *3-*7 (dismissing UCL claim that was based on a violation of the PSA).

For the above reasons, dismissal of this cause of action is appropriate.

### 4.  5th Cause of Action – Money Had & Received

*Defendants' Argument*

Defendants argue that Gilbert's common count cause of action for money had and received is based on the same facts as his slander of title and UCL claims.  Because those claims fail, the claim for money had and received also fails.

*Plaintiff's Opposition*

Plaintiff does not address these arguments.

*Legal Standard*

"The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain." Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., 748 F.Supp.2d 1145, 1175-76 (C.D. Cal. 2010); Rotea v. Izuel, 14 Cal.2d 605, 611 (1949).  The elements of a claim for money had and received are: (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the benefit of the plaintiff; and (3) the defendant has not given the money to the plaintiff.  See Chase Inv., 748 F.Supp.2d at 1175; Avidor v. Sutter's Place, Inc., 212 Cal.App.4th 1439, 1454 (2013).

*Discussion*

This cause of action is based mostly on the loan modification.  The SAC alleges that, since April 29, 2011, Gilbert has made mortgage payments at a higher rate than that agreed to in the loan modification.  See SAC ¶ 76.  The SAC then alleges that Defendants received funds under the note for the use and benefit of Gilbert, but that the funds were not used for Gilbert's benefit.  See id. at ¶¶ 77-79.  However, as discussed above, the SAC fails to adequately allege

that the loan modification is a contract, nor does the SAC identify any of the terms of the loan modification. The SAC does not support the proposition that Gilbert's loan payments were too high or that the payments were contrary to an agreed upon obligation.

The SAC also alleges that Gilbert's account with the true beneficial holder of the deed of trust was not credited due to the improperly recorded deed of trust. However, this claim appears to be based on a contention that the deed of trust was improperly recorded and that the PSA was violated. As discussed above, Gilbert's property is subject to the recorded deed of trust, and Gilbert does not have standing to challenge a violation of the PSA. Further, it is highly noteworthy that, since 2007, apparently no other "party has ever come forward to enforce Plaintiff's obligations under the deed of trust." Gutierrez v. U.S. Bank, NA, 2013 U.S. Dist. LEXIS 14319, *5 (C.D. Cal. Feb. 1, 2013).

Dismissal of this cause of action is appropriate. Cf. Berryman v. Merit Property Mgmt., Inc., 152 Cal.App.4th 1544, 1560 (2007) ("When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable.").

### **5.**     **6th Cause of Action – RICO**

*Defendants' Argument*

Defendants argue that the RICO claim fails for many reasons. First, the SAC does not allege a pattern of racketeering activity because the acts of fraud are not alleged with particularity under Rule 9 and, in any event, are based on proper communications regarding Gilbert's loan. Second, the complaint does not demonstrate a RICO enterprise. Finally, the SAC does not show an injury that resulted in damages, rather the SAC indicates only insufficient prospective injuries.

*Plaintiff's Opposition*

Gilbert argues that a plaintiff may maintain a RICO claim if the RICO violation was a proximate cause of injury. Gilbert's loan audit (which is attached as Exhibit A to the SAC) shows that Defendants' actions include an invalid transfer of beneficial rights, missing assignments in the chain of title, demanding payment without legal right under the deed of trust,

and clouding title. These acts and injuries are sufficient to state a RICO claim.

*Legal Standard*

The elements of a civil RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity; (5) causing injury to plaintiff's business or property. Living Designs, Inc. v. E.I. Dupon de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007). There is a distinction between the "person" named as the defendant and the "enterprise" with which the "person" is employed or associated. Sever v. Alaska, 978 F.2d 1529, 1533 (9th Cir. 1992). Liability depends in part "on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Cedric v. Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). A "pattern" is at least two acts of "racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is "any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010). The "pattern of racketeering activity" is something that is done by the "enterprise," and thus, the "enterprise" and the "pattern of racketeering activity" are separate and apart from one another. Odom, 486 F.3d at 549. Racketeering activity that is based on fraud must meet Rule 9(b)'s heightened pleading requirements. Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004). Finally, a plaintiff must allege a "concrete financial loss," but mere financial loss alone is not sufficient. Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 975 (9th Cir. 2008). Rather, "an injury is compensable under RICO if the injury constitutes harm to a specific business or property interest and if the alleged business or property interest is cognizable under state law." Newcal Indus. v. Ikon Office Solution, 513 F.3d 1038, 1055 (9th Cir. 2008); see Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005). Personal injuries are generally not cognizable under RICO. Couch v. Cate, 379 Fed. Appx. 560, 566 (9th Cir. 2010) (citing Diaz, 420 F.3d at 900); Smith v. BP of Am., 324 Fed. Appx. 690, 691 (9th Cir. 2009).

*Discussion*

There are problems with this cause of action.  First, the SAC does not adequately allege racketeering activity.  It appears that the SAC is relying on mail and wire fraud.  "Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud."  Sanford, 625 F.3d at 557.  However, the SAC does not meet Rule 9(b)'s heightened pleading standards.  Although mailings are referred to generally, no specific mailings are identified and there is no description of the false contents of those mailings.  See Sanford, 625 F.3d at 558 ("However, because the Smiths failed to allege any specific mailings, they once again failed to satisfy Rule 9(b)'s particularity requirement.").  The SAC also does not adequately "state the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentation," Edwards, 356 F.3d at 1066, nor does it describe the distinct conduct of the two defendants.  See Swartz, 476 F.3d at 764-65.  Finally, the SAC does not allege that the Defendants had the specific intent to deceive or defraud when they sent the mailings or wired the communications.  Without sufficiently detailed allegations, there is no racketeering activity pled, let alone a pattern of racketeering activity.

Second, the SAC is critical that Defendants:  failed to disclose securitization agreements and the fact of securitization, maintained the deed of trust in the public record, and serviced the loan without authority from the true beneficiary.  None of these contentions is persuasive.  Gilbert has offered no authority that required Defendants to disclose to him anything concerning securitization.  Cf. California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987) ("Absent an independent duty . . . failure to disclose cannot be the basis of a fraudulent [RICO] scheme.").  Without an actual obligation to disclose, Defendants' silence regarding securitization is not actionable.[5]  Further, as discussed above, Gilbert has not shown that the deed of trust no longer operates against the Property.  There is no dispute that Gilbert signed the deed of trust, and no law has been identified that requires a

---

[5] To the extent that Gilbert is again relying on violations of the PSA, no claim is stated.  See Almutarreb, 2012 U.S. Dist. LEXIS 137202, *7-*8.

15

transfer of the deed of trust to be recorded or that states a subsequent transfer of the deed of trust voids the instrument. Cf. Herrera, 205 Cal.App.4th at 1510. Finally, other allegations in the SAC contradict Gilbert's assertion that Defendants did not have authority to service the loan. Paragraph 21 of the SAC states that JP Morgan retained servicing rights under the loan. See SAC ¶ 21. Paragraph 56 of the SAC alleges that, from 2007 to the present, JP Morgan wrongfully sent monthly bills. See SAC ¶ 56. There is no indication that Gilbert did not pay these bills; in fact, the opposite is indicate. See id. at ¶ 64. The idea that an unauthorized entity would service and collect loan payments for six years without interruption or complaint from the "true beneficiary" is fanciful and implausible. Cf. Gutierrez, 2013 U.S. Dist. LEXIS 14319 at *5.

Third, the claim is littered with extraneous and incongruous allegations. For example, the SAC alleges that the conduct of the Defendants induced him to accept the loan. However, all of the Defendants' identified conduct occurred after Gilbert entered into the loan. Such allegations add nothing but confusion to the SAC.

Fourth, the allegations concerning an enterprise appear to rely on racketeering activity. However, the enterprise is not the racketeering activity, rather the enterprise performs the racketeering activity. See Odom, 486 F.3d at 549. The SAC needs to more clearly describe the "enterprise" that was formed by the Defendants. Reliance on racketeering activity alone is insufficient.

Fifth, the injury allegedly suffered by Gilbert is unclear. At one point, the SAC alleges that he faces the prospect of losing his home. However, there is no indication that the foreclosure process has either begun or concluded. The prospect of someday losing the property is speculative, and does not represent a concrete injury. Izenberg v. ETS Servs., LLC, 589 F.Supp.2d 1193, 1204 (C.D. Cal. 2008). Further, Gilbert has not shown that each of the other damages claimed represent business and property interests that are cognizable under California law. See Diaz, 420 F.3d at 900.

For these reasons, dismissal of the RICO cause of action is appropriate.[6] See Elliott,

---

[6] The SAC also appears to contain a RICO conspiracy claim under 18 U.S.C. § 1962(d). However, a plaintiff "cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." Sanford, 625 F.3d at 559; Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000).

16

2013 U.S. Dist. LEXIS 61820 at *14-*16 (dismissing nearly identical RICO allegations).

### 6. "Unpled Causes of Action"

*Parties' Arguments*

Defendants argue that three causes of action (wrongful foreclosure, Civil Code § 2923.5, and injunctive relief) are listed in the style of the SAC, but the body of the SAC does not allege them, nor do any allegations support them. Defendants request that these causes of action be dismissed with prejudice. Gilbert does not address this argument or request.

*Discussion*

The Court does not believe that claims for wrongful foreclosure or Civil Code § 2923.5 are part of this case. The SAC identifies each cause of action separately and distinctly, and these causes of action are not included as separate causes of action. Further, Gilbert's opposition does not state that he is in foreclosure or refute Defendants' assertion that the foreclosure process has not begun, and Gilbert acknowledged in November 2012 that he was not in foreclosure. Given the absence of allegations and the briefing in this motion, it appears to the Court that inclusion of the wrongful foreclosure and Civil Code § 2923.5 claims in the style was an oversight. To the extent that these claims are arguably included in the SAC, they will be dismissed.

As for the claim for injunctive relief, an injunction is a remedy, not a cause of action, and a request for injunctive relief will fail in the absence of an underlying cause of action. See Nguyen v. Bank of Am. Nat'l Ass'n, 2011 U.S. Dist. LEXIS 131776, *23-*24 (N.D. Cal. Nov. 15, 2011); Shamsian v. Atlantic Richfield Co., 107 Cal. App. 4th 967, 984-85 (2003); City of S. Pasadena v. Department of Transp., 29 Cal.App.4th 1280, 1293 (1994). Here, the prayer does request injunctive relief. See SAC Prayer ¶ 4. Because the Court has dismissed all of the underlying causes of action, the request for injunctive relief fails.

---

Because the SAC does not show a substantive violation of RICO, the SAC does not adequately allege a RICO conspiracy claim. See id.

## **CONCLUSION**

The SAC does not plead plausible causes of action. This is the first attempt by Gilbert to meet federal pleading standards. As such the Court will dismiss the SAC with leave to amend. Any amended complaint must be consistent with the analyses in this order and must meet the requirements of Federal Rule of Civil Procedure 11.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Rule 12(b)(6) motion to dismiss is GRANTED;
2. The Second Amended Complaint is DISMISSED with leave to amend;
3. Plaintiff shall file an amended complaint, that is consistent with Rule 11 and this Order, no later than fourteen (14) days from service of this order; and
4. Failure of Plaintiff to file an amended complaint within the time frame set by this Order will result in leave to amend being withdrawn and the closure of this case without further notice.

IT IS SO ORDERED.

Dated:   May 28, 2013

SENIOR DISTRICT JUDGE