1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **JAMES D. GILBERT,** | ) | **1:13-CV-265  AWI SKO** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **ORDER ON DEFENDANTS'** |
| | ) | **MOTION TO DISMISS** |
| **CHASE HOME FINANCE, LLC,** | ) | |
| **JPMORGAN CHASE BANK, N.A., and** | ) | |
| **DOES 1-100 inclusive,** | ) | (Doc. No. 16) |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

        This is a mortgage related case that was removed from the Stanislaus County Superior
Court.  Plaintiff James Gilbert ("Gilbert") has brought suit against Chase Home Financing
("CHF") and JPMorgan Chase Bank ("JP Morgan"), collectively "Defendants."  The active
complaint is the Third Amended Complaint ("TAC"), which was filed following the Court's
order granting a motion to dismiss.  Gilbert alleges causes of action for breach of express and
implied contract, slander of title, California Business & Professions Code § 17200 ("UCL"),
money had and received, 18 U.S.C. § 1962 ("RICO"), and 15 U.S.C. § 1601 ("TILA").
Defendants now move to dismiss the TAC.  For the reasons that follow, the motion will be
granted and this case will close.


## BACKGROUND

        From the TAC and judicially noticed documents, Gilbert obtained title to property located
at Nicklaus Drive in Turlock, California ("the Property") in 2003.  See Defendants' Request of

1  Judicial Notice ("RJN") Ex. 1.[1]  In February 2007, Gilbert obtained a residential loan in the

2  amount of $328,500 on the Property, which was secured by a deed of trust.  See RJN Ex. 2.  The

3  deed of trust was recorded in March 2007.  See id.  The deed of trust identifies the lender and

4  beneficiary as JP Morgan and identifies the trustee as Maryanne Day And Home Office.  See id.

5         Later in 2007, and after it had recorded the deed of trust, JP Morgan securitized and sold

6  the deed of trust to Freddie Mac.  Gilbert alleges that the Defendants did not securitize the note

7  and deed of trust in accordance with the applicable Pooling Servicing Agreement ("PSA").

8         On April 29, 2011, CHF informed Gilbert that he was eligible for a loan modification.

9  The letter also indicates that CHF is the current lender of the deed of trust.

10        On June 21, 2012, Gilbert filed this lawsuit in state court, and on July 5, 2012, filed a lis

11 pendens notice in the Stanislaus County Recorder's Office.

12        After filing an amended complaint, Defendants filed a demurrer.  The state court granted

13 the demurrer with leave to amend.

14        Gilbert then filed a second amended complaint.  Defendants removed the case to this

15 Court on February 21, 2013, due to inclusion of a RICO claim.

16        In May 2013, this Court granted Defendants' Rule 12(b)(6) motion dismiss, and

17 dismissed the second amended complaint with leave to amend.

18

19                      **RULE 12(b)(6) FRAMEWORK**

20        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

21 plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

22 dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

23 absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v.

24 Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d

25 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of

26 _____

27        [1]The RJN includes three documents that are related to Gilbert's property (a grant deed, a deed of trust, and
   a notice of lis pendens) and that were all filed in the Stanislaus County Recorder's Office.  The Court will take

28 judicial notice of these documents as public records.  See Fed. R. Evid. 201; Botelho v. U.S. Bank, N.A., 692
   F.Supp.2d 1174, 1178 (N.D. Cal. 2010); Allen v. United Fin. Mortg. Corp., 660 F.Supp.2d 1089, 1093-94 (N.D.
   Cal. 2009).

                                        2

1  material fact are taken as true and construed in the light most favorable to the non-moving party.

2  Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.

3  However, the Court is not required "to accept as true allegations that are merely conclusory,

4  unwarranted deductions of fact, or unreasonable inferences."  Willson v. Hewlett-Packard Co.,

5  668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988

6  (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient

7  factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v.

8  Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570

9  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

10  court draw the reasonable inference that the defendant is liable for the misconduct alleged."

11  Iqbal, 129 S.Ct. at 1949.  The Ninth Circuit has distilled the following principles from *Iqbal* and

12  *Twombly*:

13
> First, to be entitled to the presumption of truth, allegations in a complaint or
14  counterclaim may not simply recite the elements of a cause of action, but must
> contain sufficient allegations of underlying facts to give fair notice and to enable
15  the opposing party to defend itself effectively.  Second, the factual allegations that
> are taken as true must plausibly suggest an entitlement to relief, such that it is not
> unfair to require the opposing party to be subjected to the expense of discovery
16  and continued litigation.

17  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In deciding whether to dismiss a claim under

18  Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take

19  judicial notice of public records outside the pleadings, review materials which are properly

20  submitted as part of the complaint, and review documents that are incorporated by reference in

21  the Complaint if no party questions authenticity.  See Knievel v. ESPN, 393 F.3d 1068, 1076

22  (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a motion to

23  dismiss is granted, "[the] district court should grant leave to amend even if no request to amend

24  the pleading was made . . . ."  Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).

25  However, leave to amend need not be granted if amendment would be futile or if the plaintiff has

26  failed to cure deficiencies despite repeated opportunities.  See Mueller v. Aulker, 700 F.3d 1180,

27  1191 (9th Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

28

**DEFENDANTS' MOTION**

**1.      1st and 2nd Causes of Action – Breach of Express and Implied Contracts**

*Defendants' Argument*

Defendants argue that the first and second causes of action remain centered on vague allegations relating to purported breaches of the deed of trust, the PSA, and the loan modification agreement.  However, the TAC fails to allege that there actually existed a loan modification agreement, and continues to rely on a letter that stated that Gilbert was merely eligible for a modification.  As to the deed of trust, Gilbert's reliance on Paragraph 22 is inapplicable because he is not in default and foreclosure proceedings have not occurred.  As to the PSA, reliance on the PSA and securitization is inappropriate because the Court rejected these theories in the previous order.  Finally, the damages identified are prospective and speculative.

*Plaintiff's Opposition*

Gilbert argues that he has standing to make challenges based on violations of the PSA. JP Morgan breached the terms of the PSA in that the loan was not assigned to the Freddie Mac Trust within 90 days of the trust's closing.  Gilbert also appears to argue that the deed of trust requires a trustee to record a notice of default, and that a lender may appoint a successor trustee. Because no successor trust was named following securitization, the deed of trust was not followed and no one has authority to record a notice of default.

*Legal Standard*

Under California law, contracts may be either express or implied.  Marvin v. Marvin, 18 Cal.3d 660, 678 n.16 (1976).  The difference between an express contract and an implied contract is the mode of proof by which they are established.  See Crawford v. Gould, 56 F.3d 1162, 1168 (9th Cir. 1994); Marvin, 18 Cal.3d at 678 n.16.  An express contract is shown through the direct spoken or written words of the parties, while an implied contract is shown by the acts and conduct of the parties.  See Crawford, 56 F.3d at 1168; Marvin, 18 Cal.3d at 678 n.16; Cal. Civ. Code §§ 1620, 1621.  The elements of a cause of action for either breach of an express contract or breach of an implied contract are the same.  See Gomez v. Lincare, Inc., 173 Cal.App.4th 508, 525 (2009); Division of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal.App.3d

4

268, 275 (1977).  The elements of a breach of contract cause of action under California law are:
(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3)
defendant's breach, and (4) resulting damage to the plaintiff.  Oasis West Realty, LLC v.
Goldman, 51 Cal.4th 811, 821 (2011); Reichert v. General Ins. Co., 68 Cal.2d 822, 830 (1968).

*Discussion*

a.     PSA

In the previous dismissal order, the Court informed Gilbert that a violation of the PSA
could not form the basis of any claim.  See Gilbert v. Chase Home Finance, LLC, 2013 U.S. Dist.
LEXIS 74772, *10 (E.D. Cal. May 28, 2013).  The Court cited numerous district court cases that
had rejected a litigant's reliance on PSA violations.  See id. at *9 (citing Elliot v. Mortgage Elec.
Registration Sys., 2013 U.S. Dist. LEXIS 61820, *7-*10 (N.D. Cal. Apr. 25, 2013); Newman v.
Bank of New York Mellon, 2013 U.S. Dist. Lexis 52487, *8 (E.D. Cal. Apr. 10, 2013);
Sabherwal v. Bank of N.Y. Mellon, 2013 U.S. Dist. LEXIS 2930, *20-*21 (S.D. Cal. Jan. 7,
2013); Dinh v. Citibank, N.A., 2013 U.S. Dist. LEXIS 2312, *8-*11 (C.D. Cal. Jan. 7, 2013);
Ramirez v. Kings Mortg. Servs., 2012 U.S. Dist. LEXIS 160583, *13-*14 (E.D. Cal. Nov. 8,
2012); Armstrong v. Chevy Chase Bank, FSB, 2012 U.S. Dist. LEXIS 144125, *6-*7 (N.D. Cal.
Oct. 3, 2012); Hale v. World Sav. Bank, 2012 U.S. Dist. LEXIS 141917, *17-*18 (E.D. Cal. Oct.
1, 2012); Almutarreb v. Bank of N.Y. Trust Co., N.A., 2012 U.S. Dist. LEXIS 137202, *3-*7
(N.D. Cal. Sept. 24, 2012); Junger v. Bank of Am., 2012 U.S. Dist. LEXIS 23917, *7-*8 (C.D.
Cal. Feb. 24, 2012)).  The Court's position has not changed.  No claim based on the PSA is
viable.

b.     Deed of Trust

The TAC remains unclear.  The basis of the cause of action appears to be alleged flaws in
the securitization process and a resultant violation of Paragraph 22 of the deed of trust.

In terms of securitization, securitization does not affect the ability to foreclose.  See Hale,
2012 U.S. Dist. LEXIS 141917 at *19; Sami v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS
38466, *12-*14 (N.D. Cal. Mar. 21, 2012); Tang v. Bank of America, N.A., 2012 U.S. Dist.
LEXIS 38642, *23 (C.D. Cal. Mar. 19, 2012); Lane v. Vitek Real Estate Indus. Grp., 713

F.Supp.2d 1092, 1099 (E.D. Cal. 2010).  Moreover, this point appears to be based on violations of the PSA, which is not actionable by Gilbert.  See Gilbert, 2013 U.S. Dist. LEXIS 74772 at *9-*10.

With respect to Paragraph 22 of the deed of trust, that paragraph in relevant part requires the lender or Trustee to execute a written notice of default if the power of sale is to be invoked. See RJN Ex. 1 at ¶ 22.  The Court addressed reliance on the power of sale provisions as part of its previous order.  The Court stated:

> . . . Defendants have expressly stated that the foreclosure process has not begun, Gilbert has not challenged that assertion, and Gilbert's opposition to the demurrer in state court in November 2012 acknowledged that he is not in foreclosure. Significantly, neither party has submitted a notice of default or any other recorded document that might suggest that foreclosure has begun, and Gilbert has made no allegations that identify when the foreclosure process began or where in the foreclosure process he is.  If the foreclosure process is not proceeding or has not begun, then the power of sale has not been invoked.  Without invoking the power of sale, it is unknown how Defendants could be breaching the power of sale provisions.

Gilbert, 2013 U.S. Dist. LEXIS 74772 at *11.  The TAC does nothing to address this analysis. There is no indication that any entity has actually begun foreclosure proceedings.  As such, Paragraph 22 could not have been breached.  No claim based on the deed of trust is alleged.

c.    Loan Modification

The opposition does not address or attempt to defend arguments relating to the loan modification claim.  As with the previous complaint, there is an allegation that CHF sent a letter informing Gilbert that he was eligible for a loan modification.  See TAC ¶ 13.  However, like the previous complaint, the TAC does not describe the letter in any detail, does not contain facts that indicate contract formation, and does not describe the terms of the loan modification/contract.[2] In the absence of such facts, and the failure of Gilbert to defend this theory, no claim is alleged.

**2.      3rd Cause of Action – Slander of Title**

*Defendants' Argument*

Defendants argue *inter alia* that Gilbert's reliance on Civil Code § 2932.5 is improper

---

[2]The TAC does allege that CHF breached the modification agreement by not recording the modification. See TAC ¶ 30(a).  However, the agreement referenced is an agreement dated January 5, 2011.  The problem is that CHF did not send a letter regarding modification until April 2011.  See TAC ¶ 13.  Further, identifying what appears to be an immaterial breach without addressing the Court's concerns over contract formation is insufficient.

1    because that section does not apply to deeds of trust.  Further, none of the required elements for

2    slander of title are adequately pled.

3         *Plaintiff's Opposition*

4         Gilbert argues that a cause of action has been pled.  The recorded deed of trust is a

5    publication and is invalid because JP Morgan is not the true beneficiary and thus, could not make

6    a valid assignment.  Rather, JP Morgan sold the beneficial interest in the deed of trust to the

7    Freddie Mac Trust.  By maintaining a false deed of trust, Defendants recorded a false document.

8    JP Morgan also acted with malice because it recorded documents in reckless disregard of the

9    facts underlying the foreclosure process.  Finally, the TAC shows pecuniary loss in that Gilbert

10    was forced to seek legal counsel to protect his interest and prevent his home from being

11    wrongfully sold.  The deed of trust also negatively impacts Gilbert's ability to sell the property.

12         *Legal Standard*

13         The elements of a claim for slander of title are: (1) a publication; (2) the publication is

14    without privilege or justification; (3) the publication is false; and (4) the publication causes direct

15    and immediate pecuniary loss.  See <u>Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings,</u>

16    <u>LLC</u>, 205 Cal.App.4th 999, 1030 (2012); <u>Manhattan Loft, LLC v. Mercury Liquors, Inc.</u>, 173

17    Cal.App.4th 1040, 1051 (2009).  "If the publication is reasonably understood to cast doubt upon

18    the existence or extent of another's interest in land, it is disparaging to the latter's title." <u>Sumner</u>

19    <u>Hill</u>, 205 Cal.App.4th at 1030.

20         *Discussion*

21         Gilbert does not defend the TAC's significant reliance on Civil Code § 2932.5.  <u>See</u> TAC

22    ¶ 44.  However, as stated in the prior order, Civil Code § 2932.5 does not apply to deeds of trust.

23    <u>See</u> <u>Walton v. MERS</u>, 2013 U.S. App. LEXIS 2846, *3 (9th Cir. Feb. 7, 2013); <u>Caballero v.</u>

24    <u>Bank of Am.</u>, 468 Fed. Appx. 709 (9th Cir. Feb. 15, 2012); <u>Gilbert</u>, 2013 U.S. Dist. LEXIS

25    74772 at *11; <u>Herrera v. Federal Nat'l Mortg. Ass'n</u>, 205 Cal.App.4th 1495, 1508-10 (2012);

26    <u>Calvo v. HSBC Bank USA, N.A.</u>, 199 Cal.App.4th 118, 123 (2011).  Therefore, Civil Code

27    § 2932.5 continues to have no application to this case.  <u>See</u> <u>id.</u>

28         In terms of the elements of slander of title, no cause of action is stated.  The TAC

1    expressly alleges that after JP Morgan recorded the deed of trust, JP Morgan then securitized the

2    deed of trust and sold it to Freddie Mac.  See TAC ¶ 12.  This means that at the time the deed of

3    trust was recorded, JP Morgan was in fact the beneficiary and the deed of trust was in no

4    arguable way false.  Cf. RJN Ex. 2 with TAC ¶ 12.  Although the TAC alleges that JP Morgan

5    assigned its interests, "where a deed of trust is involved, the trustee may initiate foreclosure

6    irrespective of whether an assignment of the beneficial interest is recorded."  Haynes v. EMC

7    Mortg. Corp., 205 Cal.App.4th 329, 336 (2012); see also Herrera, 205 Cal.App.4th at 1510

8    ("Nothing in the comprehensive statutory scheme governing nonjudicial foreclosures . . .

9    contains a requirement that [the] assignment of the [deed of trust] . . . must be acknowledged and

10   recorded before the foreclosure sale . . . .").  Gilbert cites no authority that would require

11   Defendants to record an assignment of the deed of trust.  Further, as the Court explained in the

12   previous order:

13            There is no dispute that Gilbert signed the recorded deed of trust or that his
              property is subject to the recorded deed of trust.  The deed of trust makes
14            provision for the sale and assignment of itself and the note, but it does not require
              that such transfers be recorded.  See RJN Ex. 2 at ¶ 20.  That a subsequent
15            transaction, that was not required to be recorded, makes one aspect of the deed of
              trust no longer accurate does not change the fact that the deed of trust was signed
16            by Gilbert and applies to his property.  Without additional argument and citation
              to applicable authority by Gilbert, it is unknown how the deed of trust filed on
17            March 23, 2007, casts any doubt on the extent of Gilbert's interest in the property.
              Gilbert's property was subject to the deed of trust on March 23, 2007, and it
18            appears to remain subject to the same deed of trust to this day.  That is,
              irrespective of whether JP Morgan is still the beneficiary under the deed of trust,
19            that deed of trust remains applicable against Gilbert's property.

20   Gilbert, 2013 U.S. Dist. LEXIS 74772 at *16-*17.  There is nothing new to change this analysis.

21            In sum, the TAC shows that Gilbert's property is subject to the deed of trust and that it

22   was recorded by JP Morgan when JP Morgan was the beneficiary.  There is no false publication,

23   the publication was justified, no duty to record a subsequent transfer of the deed of trust has been

24   established, and the deed of trust does not cast doubt on Gilbert's interest in the property.

25   Dismissal of this claim is proper.

26        **3.        4th Cause of Action – UCL**

27   *Defendants' Argument*

28            Defendants argue that Gilbert lacks standing to bring UCL claims because he has not

1    shown an economic injury that was caused by an unfair business practice.  The injury allegations

2    are too vague and conclusory, and there has been no foreclosure sale or notice of default.

3    Further, Gilbert has failed to identify an "unlawful" business practice, has not pled fraudulent

4    conduct with the particularity required by Federal Rule of Civil Procedure 9, and has not

5    adequately described any "unfair" conduct.  The TAC's allegations are entirely conclusory.

6        *Plaintiff's Opposition*

7        Gilbert argues that the TAC's other causes of action serve as a derivative basis for the

8    UCL claim.  Gilbert emphasizes that no assignment of the power of sale or substitution of trustee

9    have been recorded despite the transfer of the deed of trust to Freddie Mac.  Gilbert also argues

10   that he is likely to prevail on his wrongful foreclosure claim, that real property is unique, and

11   Defendants should not be permitted to rely on a void and wrongful deed of trust.

12       *Legal Standard*

13       The UCL prohibits "unfair competition," which is defined to mean any "unlawful, unfair,

14   or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; In re Tobacco II Cases,

15   46 Cal.4th 298, 311 (2009).  A private person has standing to bring a UCL claim when: (1) the

16   person establishes a loss or deprivation of money or property sufficient to qualify as an injury in

17   fact, i.e. economic injury; and (2) show that the economic injury was the result, i.e. caused by,

18   the unfair business practice that is the gravamen of the claim.  Kwikset Corp. v. Superiro Court,

19   51 Cal.4th 310, 322 (2011).

20       For claims based on "unlawful" conduct, the UCL "borrows violations of other laws and

21   treats these violations, when committed pursuant to business activity, as unlawful practices

22   independently actionable . . . and subject to the distinct remedies provided thereunder."  Farmers

23   Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383 (1992).  Thus, a "defendant cannot be liable

24   under [the UCL] for committing 'unlawful business practices' without having violated another

25   law."  Ingles v. Westwood One Broadcasting Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005).

26       For claims based on "fraudulent" conduct, a business practice is fraudulent under the

27   UCL if "members of the public are likely to be deceived."  Kaldenbach v. Mutual of Omaha Life

28   Ins. Co.,178 Cal.App.4th 830, 848 (2009).  Federal Rule of Civil Procedure 9(b)'s heightened

9

1  pleading standard applies to UCL claims based on "fraudulent" conduct.  See Kearns v. Ford

2  Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009).

3        For claims based on "unfair" practices that are brought by consumers, there is a split of

4  authority and at least three different methods for determining whether a business practice is

5  "unfair": (1) the "balancing test" in which the impact on the victim is balanced against the

6  reasons, justifications, and motives of the wrongdoer; (2) the "tethered test" whereby an allegedly

7  violated public policy is tethered to specific constitutional, statutory, or regulatory provisions;

8  and (3) the "section 5 test" which adopts the factors that determine whether section 5 of the

9  Federal Trade Commission Act has been violated, i.e. a substantial consumer injury, the injury is

10  not outweighed by countervailing benefits to consumers or competition, and the consumers could

11  not have reasonably avoided the injury.  See In re Ins. Installment Fee Cases, 211 Cal.App.4th

12  1395, 1417-18 (2012).

13        *Discussion*

14        The same arguments were made by the parties in the prior motion to dismiss.  Dismissal

15  is appropriate because the TAC does not cure the deficiencies that were previously identified.

16        First, the TAC's UCL allegations aver only that Gilbert has suffered and will continue to

17  suffer "damages."  No description of the damages suffered is provided.  Without allegations that

18  show economic injury, Gilbert does not have standing.  See Kwikset, 51 Cal.4th at 322.

19        Second, although the TAC uses the term "unlawful," the UCL allegations do not identify

20  which laws were violated.  The TAC incorporates by reference all previous paragraphs.  This

21  gives some credence to the opposition's assertion that this claim is a derivative cause of action.

22  However, as discussed above, the three prior causes of action are not viable.  Without a violation

23  of another law, there is no "unlawful" UCL claim.  See Ingles, 129 Cal.App.4th at 1060.

24        Third, although the TAC uses the term "unfair," there are no allegations made under the

25  UCL cause of action that fit one of the three methods for demonstrating "unfair" conduct.  See In

26  re Ins. Installment, 211 Cal.App.4th at 1417-18; Davis, 179 Cal.App.4th at 583-88.

27        Finally, the "fraudulent" conduct allegations do not meet Rule 9(b)'s heightened pleading

28  standard.  The who, what, when, where, and how of the fraudulent conduct are not identified, and

the TAC does not identify what each defendant did in the fraudulent scheme.  See Kearns, 567 F.3d at 1124; Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).  Further, this cause of action indicates that "defendants" recorded documents without authority to do so, and failed to record other documents.  See TAC at ¶ 64.  However, as discussed above, the deed of trust was properly filed by JP Morgan, and the recording requirement of Civil Code § 2932.5 does not apply in this case.  Finally, to the extent that a violation of the PSA is implied, the PSA cannot serve as a basis for the UCL claim.  See Almutarreb, 2012 U.S. Dist. LEXIS 137202 at *3-*7.

**4.    5th Cause of Action – Money Had & Received**

*Defendants' Argument*

Defendants argue that Gilbert's claim for money had and received is based on the same facts as his slander of title and UCL claims.  Because those claims fail, the claim for money had and received also fails.  Further, Gilbert fails to allege any facts related to this cause of action beyond conclusory statements.

*Plaintiff's Opposition*

Gilbert argues that Defendants acknowledge the three elements of a common count.  The TAC meets these elements.  Defendants complain that Gilbert did not allege an indebtedness, what amount was owed or received, or any non-payment.  However, TAC alleges that payments were made under the note and deed of trust, but those payments were not credited to Gilbert.  A valid cause of action has been pled.

*Legal Standard*

"The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain."  Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., 748 F.Supp.2d 1145, 1175-76 (C.D. Cal. 2010); Rotea v. Izuel, 14 Cal.2d 605, 611 (1949).  The elements of a claim for money had and received are: (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the benefit of the plaintiff; and (3) the defendant has not given the money to the plaintiff.  See Chase Inv., 748 F.Supp.2d at 1175; Avidor v. Sutter's Place, Inc., 212 Cal.App.4th 1439, 1454 (2013).

1  *Discussion*

2      The TAC appears to allege that Gilbert paid money to the Defendants pursuant to the

3  Note, but that the money was not credited to him.[3]  Specifically, the TAC alleges that monies

4  paid to the Defendants were not credited to Gilbert's account with the "beneficial interest holder

5  due to the illegally recorded deed of trust." TAC ¶ 76.  Paragraph 76 of the TAC shows that this

6  claim is based on a contention that the deed of trust was improperly recorded.  The allegation

7  also appears to relate to securitization and violations of the PSA.  However, as discussed above,

8  Gilbert's property is subject to the recorded deed of trust, the deed of trust was properly recorded

9  by JP Morgan, and Gilbert does not have standing to challenge any violation of the PSA.

10      Also, the TAC does not discuss the time period in which payments were not credited,

11  how many payments were not credited, or how much is owed to Gilbert.  While perhaps such

12  detail is generally not required in a typical claim for money had and received, the loan has been

13  in existence for seven years and does not appear to be in default or in foreclosure.  As the Court

14  observed in the prior motion, "it is highly noteworthy that apparently no other 'party has ever

15  come forward to enforce Plaintiff's obligations under the deed of trust.'" Gilbert, 2013 U.S. Dist.

16  LEXIS 74772 at *24 (quoting  Gutierrez v. U.S. Bank, NA, 2013 U.S. Dist. LEXIS 14319, *5

17  (C.D. Cal. Feb. 1, 2013)).  Given the age of the loan and the 2007 transfers, it is implausible to

18  assume that the "true beneficiary" would stay silent when it has not received the payments owed.

19      Finally, this cause of action incorporates all prior paragraphs, and contains similar

20  allegations to other unviable causes of action.  Gilbert does not respond to the argument that this

21  cause of action is an alternative claim to the other alleged causes of action.  Cf. Cortez v. New

22  Century Mortg. Corp., 2012 U.S. Dist. LEXIS 13469, *12 n.3 (N.D. Cal. Feb. 3, 2012) (holding

23  the failure to respond to an argument about the nature of a claim was a concession of the

24  defendant's characterization of that claim); In re Fresh & Process Potatoes Antitrust Litig., 834

25  F.Supp.2d 1141, 1169 (D. Idaho 2011) (same).  To the extent that this cause of action is meant as

26  an alternate method of recovery to another pled cause of action, it is subject to dismissal.  See

27

28      [3]The allegations under this cause of action are nearly identical to those in the second amended complaint.
The only material difference is that Gilbert has deleted the reference to the alleged April 29, 2011 loan modification.

12

1   Berryman v. Merit Property Mgmt., Inc., 152 Cal.App.4th 1544, 1560 (2007) ("When a common

2   count is used as an alternative way of seeking the same recovery demanded in a specific cause of

3   action, and is based on the same facts, the common count is demurrable if the cause of action is

4   demurrable.").

5        For the above reasons, dismissal of this cause of action is appropriate.

6       **5.**      **6th Cause of Action – RICO**

7       *Defendants' Argument*

8       Defendants argue that the RICO claim fails for the same reasons that it failed in the prior

9   complaint.  The TAC does not allege a pattern of racketeering activity, the acts of fraud are not

10  alleged with particularity under Rule 9, and the identified communications regarding Gilbert's

11  loan were on proper and legitimate.  Further, the TAC neither adequately alleges a RICO

12  enterprise or a compensable injury to Gilbert.

13       *Plaintiff's Opposition*

14       Gilbert argues that a plaintiff may maintain a RICO claim if the RICO violation was a

15  proximate cause of injury.  Gilbert's loan audit shows that Defendants' actions include an invalid

16  transfer of beneficial rights, missing assignments in the chain of title, demands for payment

17  without legal right under the deed of trust, and clouding title.  These acts and injuries are

18  sufficient to state a RICO claim.

19       *Legal Standard*

20       The elements of a civil RICO claim are:  (1) conduct (2) of an enterprise (3) through a

21  pattern (4) of racketeering activity; (5) causing injury to plaintiff's business or property.  Living

22  Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005).   An

23  "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and

24  any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. §

25  1961(4); Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007).  A "pattern" is at least two

26  acts of "racketeering activity."  18 U.S.C. § 1961(5).  "Racketeering activity" is "any act

27  indictable under several provisions of Title 18 of the United States Code, and includes the

28  predicate acts of mail fraud, wire fraud and obstruction of justice."  Sanford v. MemberWorks,

1    Inc., 625 F.3d 550, 557 (9th Cir. 2010).  Finally, a plaintiff must allege a "concrete financial

2    loss" as an injury, but mere financial loss alone is not sufficient.  Canyon County v. Syngenta

3    Seeds, Inc., 519 F.3d 969, 975 (9th Cir. 2008); see also Newcal Indus. v. Ikon Office Solution,

4    513 F.3d 1038, 1055 (9th Cir. 2008).

5         *Discussion*

6         For the reasons stated in the previous order, no viable RICO claim is alleged.  See

7    Gilbert, 2013 U.S. Dist. LEXIS 74772 at*27-*31.  Essentially, the TAC: (1) does not adequately

8    plead racketeering activity (including following Rule 9(b)'s heightened pleading standard for

9    fraud); (2) does not identify any duty to disclose or show that the deed of trust does not operate

10   against Gilbert's property; (3) does not properly allege a RICO enterprise; (4) does not

11   adequately identify a compensable RICO injury; and (5) remains littered with unnecessary and

12   incongruous allegations.  See id.  The most relevant new allegations in the TAC are little more

13   than citations to unpublished cases.  See TAC ¶¶ 80-82.  A bare citation to unpublished cases,

14   without any additional factual allegations is insufficient.

15        For these reasons, dismissal of this cause of action is appropriate.

16   **6.      7th Cause of Action – TILA**

17        *Defendants' Arguments*

18        Defendants argue that this cause of action was not included in the previous complaint, but

19   is included in the TAC as an afterthought.  The cause of action is time barred by the one year

20   statute of limitations.  The loan was made in 2007, but this lawsuit was not brought until 2012,

21   and there are no factual allegations that support tolling.

22        *Plaintiff's Opposition*

23        Gilbert argues that the TAC adequately allege violations of TILA.  Defendants violated

24   the statute by: (1) not providing Gilbert with accurate material that is required to be disclosed,

25   and (2) not taking into account the legislature's intent in passing TILA.  The failure to provide

26   the required disclosures and notices effectively tolls the limitations period.[4]

27   ─────────────

28        [4]The opposition also states that the third and fourth causes of action under TILA and RESPA are pled correctly.  The opposition also discusses's Defendants' reliance on their status as servicers.  However, the TILA claim is the seventh cause of action, there is no RESPA claim, and Defendants made no arguments regarding servicer

1     _Legal Standard_

2           "TILA protects consumers from fraud, deception, and abuse within the residential secured

3     lending marketplace by mandating that lenders disclose certain information to borrowers."

4     McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1327 (9th Cir. 2012).   TILA

5     "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with

6     things like finance charges, annual percentage rates of interest, and the borrower's rights."   Beach

7     v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).   The failure to satisfy TILA's requirements

8     subjects a lender to "statutory and actual damages [that are] traceable to a lender's failure to

9     make the requisite disclosures."   Id. (citing 15 U.S.C. § 1640).   There is a one year statute of

10    limitations period in which to file an action for such damages.   See 15 U.S.C. § 1640(e); Beach,

11    523 U.S. at 412.   TILA's one-year limitations period of "runs from the date of consummation of

12    the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances,

13    suspend the limitations period until the borrower discovers or had reasonable opportunity to

14    discover the fraud or non-disclosures that form the basis of the TILA action."   King v. California,

15    784 F.2d 910, 915 (9th Cir. 1986); see also Cervantes v. Countrywide Home Loans, Inc., 656

16    F.3d 1034, 1045 (9th Cir. 2012).   "Consummation" is defined as "the time that a consumer

17    becomes contractually obligated on a credit transaction."   12 C.F.R. § 226.2(a)(13); Grimes v.

18    New Century Mortg. Corp., 340 F.3d 1007, 1009 (9th Cir. 2003).   That is, there is a failure to

19    make required disclosures, if at all, at the time the loan documents are signed.   See Cervantes,

20    656 F.3d at 1045; Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003).

21          _Discussion_

22          No plausible TILA claim is stated.   First, the TAC does not identify which provisions of

23    TILA were violated.   See Gallegos v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 87173,

24    *15 (E.D. Cal. June 18, 2013).   Second, the TILA violation would have occurred in 2007, if at

25    all.   Gilbert had until 2008 in which to file suit.   However, Gilbert did not bring suit until 2012.

26    The face of the TAC shows that the TILA claim is time barred.

27

28    status.   These aspects of the opposition indicate that Gilbert is merely cutting and pasting portions of some other
      opposition, irrespective of their applicability to this case.

1   Gilbert appears to argues that the failure to disclose the TILA required information is

2   alone sufficient to toll the limitations period.  This argument is contrary to Ninth Circuit

3   authority that describes the circumstances of when tolling applies, and the failure of a defendant

4   to disclose TILA information is not one of those circumstances.  See Cervantes, 656 F.3d at

5   1045; King, 784 F.2d at 915.  There are no factual allegations that support tolling.  Dismissal of

6   this cause of action is appropriate.

7

8                                  **CONCLUSION**

9   The TAC suffers from the same problems as the second amended complaint.  For

10  basically the same reasons discussed in the Court's prior dismissal order, dismissal of each cause

11  of action in the TAC is appropriate.  See Gilbert, 2013 U.S. Dist. LEXIS 74772 at *6-*33.

12  Despite the Court's prior analyses, Gilbert has not corrected the deficiencies.  Indeed, many of

13  the inapplicable theories and extraneous and conclusory allegations that were contained in the

14  second amended complaint have been reasserted in the TAC.  Further, the Court finds it telling

15  that Gilbert's opposition to this motion to dismiss is very similar, and in some instances

16  identical, to his previous opposition.  Given the nature of the TAC and the opposition filed to this

17  motion, it is clear that permitting further amendment would be futile.  See Mueller, 700 F.3d at

18  1191; Telesaurus, 623 F.3d at 1003.  The TAC will be dismissed with prejudice.

19

20                                    **ORDER**

21  Accordingly, IT IS HEREBY ORDERED that:

22  1.   Defendants' motion to dismiss is GRANTED;

23  2.   The Third Amended Complaint is DISMISSED with prejudice; and

24  3.   The Clerk shall CLOSE this case.

25  IT IS SO ORDERED.

26
    Dated:    July 31, 2013                          _____

27                                        SENIOR  DISTRICT  JUDGE

28